DAVID PRATT *et al.*

*v.*

SAMUEL MYERS *et al.*

1. VOLUNTARY SETTLEMENT — *whether fraudulent as to subsequent cred-itors.* Where a person, not being in debt, for the purpose of making provision for his wife, contributes of his own money toward the purchase of property in her name, the transaction will be upheld as against a subsequent creditor of the husband, there appearing nothing to show a fraudulent design in respect to subsequent indebtedness.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion states the case.

Mr. JOHN LYLE KING, for the appellants.

Mr. JAMES GOGGIN, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court

This was a creditor's bill, brought by appellees in the Superior Court of Chicago against appellants, to subject real estate held in the name of Sarah Pratt to the payment of their claim. It appears David Pratt became indebted to appellees, in the year 1867, in the sum cf $264, for which they recovered a judgment, upon which an execution was returned, no property found. The real estate consisted of lots Nos. 28, 29, 30, and 31, in Hamilton's subdivision, and was bought in 1863, and conveyed to Sarah Pratt; and of the purchase money paid, Mrs. Pratt acquired $280 of a son, and $395 was from the earnings in the separate business of each. David Pratt was not indebted to any one until in December, 1866, and then he only owed this debt. In 1864 houses were erected on three of

24       Pratt *et al. v.* Myers *et al.*       [Sept. T.,

Opinion of the Court.

the lots, valued at $1,500. They were built with money principally raised by mortgaging the property, which was afterward paid from the rents received and the earnings of appellants' separate business, in which the profits were mingled.

In 1868, subsequently to the rendition of the judgment in favor of appellees, houses were erected on lots 30 and 31, with means, as both appellants testify, acquired prior to incurring the debt to appellees. And it is alleged in the answer that this property was purchased, and the title conveyed to Sarah Pratt, to secure her a permanent investment. The master reported that the lots, with the improvements, were worth, at the time of the trial, the sum of $11,250, and without improvements, $6,600 ; and it was also found that of the $6,750 paid for the houses, David Pratt contributed $2,000, and $3,350 was derived from the rent of the houses, and $1,400 remained unpaid. This was an estimate of the whole property, including the lots and improvements. On these facts, the court below found that the property was owned jointly by David and Sarah Pratt, and that he owned an interest of one undivided half, and decreed that it be sold. To reverse that decree, the record is brought to this court, and various errors are assigned.

In the case of *Sweeney* v. *Damron*, 47 Ill. 450, it was held, that if a husband, not being in debt, for the purpose of making provision for his wife, purchases property with his own means, and has it conveyed to her or to trustees for her use, the transaction will be upheld. And the same rule was announced in the case of *McLaurie* v. *Partlow*, 53 Ill. 340, and these cases but followed the case of *Moritz* v. *Hoffman*, 35 id. 553. The proposition is, of course, subject to the limitation that the transaction is fair, and not with a view to defrauding creditors at the time, or with a view to future fraudulent indebtedness. In this case, a careful examination of the evidence fails to disclose any fraudulent purpose. David Pratt was not in debt when the property was purchased, and, under the well recognized rules of law, he had the right to purchase, and have conveyed to his wife, the property in controversy. He, then, was

under no legal or moral obligation to hold his property in his own hands or name for appellees or any other person, but could dispose of it as he chose. Appellees, then, had no claim on him, and, by contributing a portion of the purchase money to buy and improve this property for his wife, he wronged no person. Appellees' debt was created after the purchase, and after David Pratt's money was paid for the lots, and after all of it was earned which was applied to its improvement.

Appellees' claim could under no known principle of law have a retroactive effect on this purchase so as to become a lien, unless it had been shown that the property was conveyed to Mrs. Pratt, with a view to defraud appellees. And there is no evidence establishing such fraud. To hold this property subject to appellees' debt would be to deny the power to make a settlement on a wife or children in any case, if the donor afterward become indebted; it would be to hold that indebtedness instead of fraud, should avoid all such settlements. That is not, nor has it ever been established as, the law. We are unable to perceive any grounds for sustaining the decree of the court below, and it is reversed and the cause remanded.

*Decree reversed.*